AO 91 (Rev. 11/11)  Criminal Complaint

# UNITED STATES DISTRICT COURT
### for the
### Southern District of Indiana

**SEALED**

| United States of America | ) | |
| --- | --- | --- |
| v. | ) | |
|  | ) | Case No. |
| GARY D. TINSLEY | ) | 1:19-mj-0862 |
|  | ) | |
|  | ) | |
|  | ) | |

*Defendant(s)*

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of **September 17, 2019** in the county of **Hamilton** in the **Southern** District of **Indiana**, the defendant(s) violated:

| Code Section | Offense Description |
| --- | --- |
| 18 U.S.C. § 922(g)(1) | Felon in Possession of a Firearm |

This criminal complaint is based on these facts:

See attached affidavit.

☑ Continued on the attached sheet.

_____
*Complainant's signature*

SA Steven Secor, FBI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 09/19/2019

_____
*Judge's signature*

City and state: Indianapolis, IN

Mark J. Dinsmore, U.S. Magistrate Judge
*Printed name and title*

**AFFIDAVIT IN SUPPORT OF APPLICATION FOR CRIMINAL COMPLAINT**

I, STEVEN T. SECOR ["AFFIANT"], being duly sworn according to law, depose and state as follows:

1. I am and have been employed as a Special Agent with the Federal Bureau of Investigation ["FBI"] since September of 2003. Prior to that time, I spent 17 weeks training to be a Special Agent at the FBI Academy in Quantico, Virginia beginning on June 1, 2003. Through the FBI, I have received extensive training related to the investigation of federal crime to include bank robberies, violent crimes, and firearms investigations. I am currently assigned to the FBI Safe Violent Crime Task Force ["VCTF"] in the Indianapolis Field Office of the FBI. In this assignment, I investigate all manner of violent crime, to include bank robberies and firearms offenses.

2. Your AFFIANT is an "investigative or law enforcement officer" within the meaning of Section 2510(7) of Title 18, United States Code; that is, an officer of the United States who is empowered by law to conduct investigations of, and to make arrests for offenses enumerated in Title 18, United States Code, Section 2516.

3. This affidavit is submitted in support of an application for a Warrant for Arrest of GARY D. TINSLEY ["TINSLEY"], black male, date of birth XX/XX/1974 and Social Security Account Number XXX-XX-0383 currently residing at 4405 Fullwood Court, Indianapolis, Indiana 46254. Based on my training and experience, and based on the facts below, you AFFIANT believes that TINSLEY committed the federal violation of felon in possession of a firearm in violation of Title 18, United States Code, Section 922(g)(1).

4. The statements contained in this affidavit are based in part on information provided by, and conversations held with, Special Agents of the FBI; Task Force Officers ["TFOs"] assigned to the Indianapolis VCTF; detectives and patrol officers of the Carmel (Indiana) Police Department ["CPD"]; witnesses; and on your AFFIANT's experience and background as a Special Agent of the FBI.

5. Your AFFIANT has not included each and every fact that has been revealed through the course of this investigation. Your AFFIANT has set forth only the facts that are believed to be necessary to establish the required foundation for this issuance of the requested Warrant for Arrest.

## BACKGROUND OF THE INVESTIGATION

6. On May 13, 2019, at approximately 12:57 p.m. two masked and hooded black males [Hereinafter: "ROBBER or ROBBERS"] entered the Stock Yards Bank & Trust at 11450 North Meridian Street, Carmel, Indiana. Both men were also wearing gloves. The lobby of this bank branch was not laid out in typical bank fashion with a lobby and teller counter. Rather, the tellers all had individual desks or offices around a central lobby, more akin to a financial services office.

7. One of the ROBBERS proceeded to a teller sitting at his desk and presented a robbery demand note that appeared to have been printed on a computer printer. The other ROBBER proceeded to round up another bank employee to gain control over them. In all, three bank employees were present for the robbery. The third teller was in the restroom at the time of the robbery. The ROBBER who rounded up the other two bank employees was armed with what appeared to witnesses and from bank surveillance footage to be a small revolver.

8. As each teller had an assigned desk, each desk had a built-in teller drawer similar to what would be found behind the teller counter at a more traditional bank branch. The teller to whom the robbery demand note was presented provided the ROBBER with cash from this drawer which the ROBBER placed in a nylon bag. The ROBBER then demanded the teller take him to the vault area.

9. The teller informed the ROBBER that vault access required two bank employees. The other ROBBER then brought the other two bank employees into the vault area. Having gained access to the bank vault, the ROBBERS were able to get approximately $67,000.00 in U.S. Currency which was under the care and control of SYB, an FDIC insured financial institution. After gaining access to the vault, the ROBBERS used zip ties to secure the hands of the two tellers. The two ROBBERS then proceeded to exit the lobby of the bank and entered what appeared to be a light-colored Sport Utility Vehicle (SUV).

10. Your AFFIANT has reviewed video and still photographs from the bank surveillance system in operation at the time of the robbery. The video corroborates the information and series of events provided by the victim tellers. Specifically, the masked, hooded, gloved, and armed nature of the ROBBERS. One of the camera angles of the video and stills points out through the front door of the bank. It was in this location that the ROBBERS parked their getaway vehicle prior to entering the bank and the vehicle which they entered upon their escape. The video also showed the front grill view and side view of the getaway vehicle as it backed away from the front door and turned to exit the parking lot.

11. Review of the getaway SUV shows it to likely be a light-colored Chrysler Aspen. The identification was made by your AFFIANT based on the grill, side view, rims, and taillights which were compared to on-line photos of SUVs. One of the distinguishing features of the

grill of the Chrysler Aspen is a winged emblem located at the center of the top of the grill. Your AFFIANT further researched the Chrysler Aspen and learned it was an SUV produced by Chrysler Corporation from 2007 to 2009. Your AFFIANT could also see from the video and still photographs that each ROBBER appeared to be approximately 6'0' in height with stockier builds.

12. CPD Detectives checked surrounding businesses for any additional video footage that might be available. A GetGo station is located at 11545 North Illinois Street, Carmel, Indiana. This is just outside the parking lot used by Stockyards Bank. Video from the GetGo confirmed that at approximately 1:02 p.m. a silver Chrysler Aspen exits the parking lot used by Stockyards bank and proceeded southbound on Illinois Street.

13. A CPD Crime Scene Technician responded to the bank robbery along with CPD Detectives and your AFFIANT. The Crime Scene Technician took photographs and collected other pieces of evidence left at the crime scene. One item of particular interest was what appeared to be a discarded or dropped used blue latex glove. This glove, processed as CPD evidence item number 7, under case number 2019-00033977, was found in the parking lot in the area of what would have been the driver side of the getaway vehicle. The collected glove was secured per CPD standards and sent to the Indiana State Police lab for DNA and fingerprint testing.

14. On July 23, 2019, the Indiana State Police returned to the CPD a lab report detailing their findings. The Indiana State Police was able to isolate a DNA profile from the discarded glove. The Indiana State Police entered the DNA profile in the Combined DNA Index System ["CODIS"] maintained by the FBI. In layman's terms, CODIS is used to compare enter and compare DNA profiles, primarily from crime scenes as collected by local and

federal law enforcement authorities. CODIS also contains DNA profiles from prisoners as their DNA samples are collected during arrest and incarceration procedures.

15. Per the CODIS entry of the DNA sample collected from the latex glove, a match was made to an existing profile. The profile matched a previously collected profile for TINSLEY. TINSLEY's Indiana BMV record lists him as 6'0" tall and 197 pounds.

16. Your AFFIANT conducted a vehicle records check for TINSLEY and discovered that he has a silver 2008 Chrysler Aspen co-registered in his name along with Lawanda Hardnett-Rados. The registered address for the Aspen is 4361 Evanston Avenue, Indianapolis, Indiana. As of August 21, 2019, the registration on the Aspen was active with its current registration expiring on May 21, 2020. The plate currently attached to this vehicle per the Indiana BMV is AUI757

17. Based in part on the CODIS hit, CPD applied for and was granted three search warrants. These warrants were for TINSLEY's home address on Fullwood Court, the 2008 Chrysler Aspen registered to TINSLEY, and for a BUCCAL swab for TINSLEY. These warrants were granted by Hamilton County (Indiana) Superior Court 3 on September 11, 2019. Over the next few days following the issuance of the search warrants, CPD and FBI conducted surveillance at the Fullwood Court address. On multiple occasions, the Chrysler Aspen registered to TINSLEY was seen at the address. On the morning of September 17, 2019, a black male who appeared to be TINSLEY exited the Fullwood Court address, entered the Chrysler Aspen, and left the vicinity of 4405 Fullwood Court. TINSLEY appeared to be the only occupant of the Chrysler Aspen.

18. With the assistance of IMPD, a traffic stop of the Chrysler Aspen was conducted in the area of 46th Street and Lafayette Road in Indianapolis, Indiana. TINSLEY was the driver and

only occupant of the Chrysler Aspen and was detained by IMPD and CPD pending the execution of the BUCCAL warrant and search warrants of the Chrysler Aspen and his residence.

19. As he was being detained, TINSLEY advised officers that he was armed with a gun and that it was in his back pocket. The gun, a Taurus .38 special revolver (S/N: JS95388), resembled the revolver used in the robbery of the Stockyards Bank described above. A second gun was located on TINSLEY's right side in a holster. This gun was a Taurus PT 24/7 Pro DS .40 caliber semi-automatic handgun (S/N: SCV08097). Both the revolver and pistol were loaded with live ammunition. The semi-automatic Taurus was loaded with 14 rounds in the magazine and 1 in the chamber for a total of 15 rounds. The revolver was fully loaded with 5 rounds. Also located on TINSLEY's person was an additional magazine for the Taurus PT loaded with 15 rounds. A search of the Aspen located an additional handgun, a Ruger P89 9mm (S/N: 313-50741) loaded with a 14 round magazine and 1 in the chamber for a total of 15 rounds. Also located were two extended 9mm magazines containing 31 rounds each, a ProMag 9mm magazine loaded with 22 rounds of live ammunition, and a 9mm magazine containing 10 rounds. Each of these additional loaded magazines was determined to fit the Ruger P89.

20. A criminal history check of TINSLEY revealed him to be a convicted felon in the state of Indiana. Specifically, under cause number 49G01 9206 CF 087645 in Marion County (Indiana), TINSLEY was convicted of murder in January of 1993. TINSLEY was released from the Indiana Department of Correction in December of 2006.

21. Your AFFIANT is familiar with Taurus and Ruger handguns. Specifically, neither of the manufacturers produces handguns in the state of Indiana. Also, no manufacturers produce

ammunition in the state of Indiana. Your AFFIANT therefore believes that the handguns found on TINSLEY's person and vehicle, as well as the ammunition in those handguns and vehicle, traveled in interstate commerce to arrive in the state of Indiana.

22. All of the above described events occurred in the Southern District of Indiana, Indianapolis Division.

## CONCLUSION

23. Based on the above information, your Affiant has probable cause to believe that GARY TINSLEY violated Title 18 United States Code, Section 922(g)(1) in that he possessed Taurus .38 special revolver and a Ruger P89 9mm handgun while being a prohibited person; specifically, a previously convicted felon.

Respectfully Submitted,

Steven T. Secor
Special Agent
Federal Bureau of Investigation

Subscribed and sworn before me the 19th day of September, 2019.

The Honorable Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana