UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 1:19-cr-00368-JPH-TAB |
| ) | |
| GARY TINSLEY ) | |
| a/k/a GARY D. TINSLEY, ) | -01 |
| ) | |
| Defendant. ) | |

**ORDER DENYING DEFENDANT'S MOTION TO SEVER**

Defendant Gary Tinsley is charged in a 12-count indictment with bank robbery, possession of marijuana with intent to distribute, unlawful use of a firearm in connection with those offenses, and unlawful possession of firearms. He has moved to sever certain counts for trial. Dkt. [43]. For the reasons below, that motion is **DENIED**.

**I.
Facts and Background**

Mr. Tinsley is charged with bank robbery (Count 1), brandishing a firearm in furtherance of a crime of violence (Count 2), possession with intent to distribute marijuana (Count 3), carrying a firearm during and in relation to a drug trafficking crime (Count 4), and eight counts of unlawful possession of a firearm by a convicted felon (Counts 5-12). Dkt. 5. Counts 1 and 2 are alleged to have occurred on or about May 13, 2019, while the remaining counts relate to conduct alleged to have occurred on or about September 19, 2019. Mr.

1

Tinsley seeks to sever Counts 1 and 2, relating to the alleged bank robbery on May 13, 2019, from the remaining counts.  Dkt. 43.

The following facts are primarily based on a September 19, 2019 sworn affidavit of FBI Special Agent Steven Secor.[1]  Dkt. 2 at 1, 8.

On May 13, 2019, two black men who both appeared to be approximately 6 feet tall "with stockier builds" wearing masks, hoods, and gloves entered a Stock Yards Bank & Trust.  *Id.* at 3 ¶ 6, 5 ¶ 11.  One of the men ("Man 1") presented a robbery-demand note to one of the bank tellers.  *Id.* at ¶ 7.  The other man ("Man 2") appeared to be armed with a small revolver and "round[ed] up" the other two bank employees.  *Id.*  Man 1 demanded that the bank employees open the vault area, from which the men got approximately $67,000 in U.S. currency.  *Id.* at 4 ¶ 8-9.  The men placed the currency in a nylon bag, used zip ties to secure bank tellers' hands, and exited the lobby of the bank.  *Id.* at ¶ 9.  After exiting, the men left in what appeared to be a "light-colored" SUV, which Agent Secor later identified as a Chrysler Aspen.  *Id.* at 4–5 ¶¶ 10–11.

After the robbery, a crime scene technician recovered what appeared to be a discarded blue latex glove from the bank parking lot, near where "the driver's side of the getaway vehicle" would have been.  *Id.* at 5 ¶ 13.  DNA testing of the glove matched an existing profile for Mr. Tinsley.  *Id.* at 6 ¶ 15.  After obtaining Mr. Tinsley's name, investigators conducted a vehicle records check and discovered that he owned a silver Chrysler Aspen.  *Id.* at ¶ 16.

---

[1] Mr. Tinsley has not contested the facts contained in this affidavit.  *See* dkt. 43, 44.

Based in part on the DNA match, officers obtained search warrants for Mr. Tinsley's home and vehicle. *Id.* at ¶ 17. On September 17, 2019, officers stopped Mr. Tinsley in his vehicle for a search. *Id.* at 6–7 ¶¶ 17–18. While he was detained, Mr. Tinsley informed officers that he had a gun in his back pocket. *Id.* at 7 ¶¶ 18–19. This gun, a Taurus .38 special revolver, "resembled the revolver used" in the bank robbery. *Id.* ¶ 19. During the traffic stop officers recovered an additional gun from Mr. Tinsley's "right side in a holster," a third gun in his vehicle, ammunition, *id.*, and around 381.13 grams of marijuana, dkt. 47 at 3 (government's response brief); dkt. 44 at 2 (defendant's brief).

Law enforcement then searched Mr. Tinsley's residence pursuant to the search warrant. Dkt. 44 at 2. During the search, investigators recovered five firearms. *Id.* Some of these guns were found in Mr. Tinsley's bedroom, where a mask and clothing items resembling those used in the robbery were also recovered. Dkt. 47 at 4 (government's response brief).

Officers then obtained a warrant to search Mr. Tinsley's cell phone. *Id.* Pursuant to that warrant, officers searched Mr. Tinsley's cell phone and found "evidence that [Mr.] Tinsley bought large quantities of marijuana and began selling it in the days after the robbery." *Id.*

## II.
## Analysis

Mr. Tinsley asks the Court to sever Counts 1 and 2, relating to the alleged bank robbery, from the other counts because of the likelihood of

3

prejudicial spillover, that is, the risk that the jury would improperly use evidence of the bank robbery to convict him of drug dealing and unlawful possession of firearms, and vice-versa. Dkt. 44 at 4. A motion to sever counts charged together in a single indictment "necessarily contains two distinct issues." *United States v. Berg*, 714 F.3d 490, 494 (7th Cir. 2013). "The first is joinder—whether the two sets of charges ha[ve] enough in common to be tried in the same case. The second is severance—whether, despite being properly joined, the two sets of charges should have been tried separately to avoid undue prejudice." *Id.*

### A. Joinder

Joinder of offenses is governed by Federal Rule of Criminal Procedure 8(a). An indictment may charge a defendant with multiple offenses "if the offenses charged . . . are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan." Fed. R. Crim. P. 8(a). Rule 8(a) is interpreted broadly and allows "liberal joinder in order to enhance judicial efficiency." *Berg*, 714 F.3d at 494 (quoting *United States v. Lanas*, 324 F.3d 894, 899 (7th Cir. 2003)).

Here, Mr. Tinsley does not argue that Counts 1 and 2 were improperly charged together under Rule 8(a). Regardless, the government's response explains the connection. Mr. Tinsley's "possession of [the] weapons is tied to his plan or scheme to make money and protect the proceeds of his scheme"

4

and that his "use of bank robbery proceeds to fund his drug business is part of a single plan or scheme to profit from the sale of drugs." Dkt. 47 at 6.

Because the proffered evidence shows that the conduct charged in all counts was part of a common scheme or plan, Counts 1 and 2 are properly joined to the remaining counts under Rule 8(a). *See United States v. Nettles*, 476 F.3d 508, 515-16 (7th Cir. 2007) (finding that charges of attempting to destroy a federal building and counterfeiting were properly joined because the "offenses were sufficiently intertwined so that evidence of each offense would have been admissible in a separate trial for the other offense.").

### B. Severance

Even if offenses are properly joined in a single indictment, "the court may order separate trials of counts" if joinder of offenses "appears to prejudice a defendant." Federal Rule of Criminal Procedure 14(a). District courts must balance "the cost of multiple trials against the possible prejudice inherent in a single trial." *United States v. Calabrese,* 572 F.3d 362, 368 (7th Cir. 2009) (citations omitted). The Rule 14 standard is "exacting." *United States v. Carter*, 695 F.3d 690, 700-01 (7th Cir. 2012) (quoting *Calabrese*, 572 F.3d at 368). "[I]t is not enough for a defendant to show 'that separate trials may have provided him a better opportunity for an acquittal.'" *Id.* Rather, a defendant "must be able to show that the denial of severance cause[s] him actual prejudice in that it prevent[s] him from receiving a fair trial." *Id.* "[P]rejudice requiring severance is not shown if evidence on the severed counts would be admissible in the trial of the remaining counts." *United States v. Windom*, 19

5

F.3d 1190, 1198 (7th Cir. 1994) (quoting *United States v. Rogers*, 475 F.2d 821, 828 (7th Cir. 1973)).

Here, Mr. Tinsley argues that he will be prejudiced in a single trial because of the risk that the jury will improperly use evidence relating to the bank robbery counts to convict him of the drug and firearm charges and vice versa. Dkt. 44 at 4. The government responds that Mr. Tinsley cannot show prejudice because "the evidence and witnesses for all 12 counts is identical, and counts 3–12 establish motive and intent for counts 1-2." Dkt. 47 at 7–8.

The government's theory of the case is that Mr. Tinsley committed the bank robbery to fund his drug trafficking business. Dkt. 47 at 10. The government proffers that the evidence will show that, although Mr. Tinsley was unemployed, he "suddenly had thousands of dollars to spend" after the robbery, dkt. 47 at 10, and that shortly before the robbery Mr. Tinsley "lament[ed] to an acquaintance about not having marijuana." *Id.* Furthermore, hours after the robbery, Mr. Tinsley exchanged text messages with an acquaintance in an attempt to purchase marijuana. *Id.* Therefore, evidence of the marijuana could show motive and may be admissible in a trial for bank robbery.

In addition, Mr. Tinsley was arrested while carrying a firearm that "appear[ed] to be identical" to the one used in the bank robbery. Dkt. 47 at 9. The government alleges that this firearm, found on Mr. Tinsley's person, resembles the one used in the bank robbery in color, shape, and size. *Id.* Therefore, evidence of this firearm could suggest identity and thus could be

6

admissible in a trial for bank robbery. *United States v. Traeger*, 289 F.3d 461, 473 (7th Cir. 2002) (affirming denial of severance where evidence of one robbery would be admissible in a trial for attempted robbery to show identity).

Evidence in support of additional counts may cause some prejudice in the sense that, like all inculpatory evidence, it increases the likelihood of a finding of guilt. But the standard under Rule 14 is not whether separate trials on separate counts may have given a defendant a better shot for an acquittal; it's whether the trial of joined counts prevents a defendant from receiving a fair trial. *Calabrese,* 572 F.3d at 368; *see also United States v. States*, 652 F.3d 734, 743 (7th Cir. 2011) ("The claim that a charge of attempted murder by itself resulted in prejudicial spillover with respect to the other charges is the sort of garden variety side effect present in every case in which multiple counts are joined.") (internal citations and quotations omitted). Here, Mr. Tinsley has not shown that joinder of counts 1 and 2 with the remaining counts is likely to be so prejudicial as to prevent him from getting a fair trial. Rather, the charged "offenses were sufficiently intertwined so that evidence of each offense would [be] admissible in a separate trial for the other offense.'" *Nettles,* 476 F.3d at 515; *see also Windom,* 19 F.3d at 1198.

Even if Mr. Tinsley could show prejudice, that alone is not enough to require severance. Mr. Tinsley "must overcome the dual presumptions that a jury will capably sort through the evidence and will follow limiting instructions from the court to consider each count separately." *United States v. Peterson*, 823 F.3d 1113, 1124 (7th Cir. 2016) (quoting *United States v. Turner*, 93 F.3d

7

276, 284 (7th Cir. 1996)). Mr. Tinsley has not offered any reason for the Court to conclude that a jury will have trouble sorting through the evidence and applying the evidence to each charge separately. The charges are not complex, the government's theory of the case is straightforward, and most of the government's evidence was collected from Mr. Tinsley's residence, vehicle and phone. Dkt. 47 at 15. Moreover, "limiting instructions will often cure any risk of prejudice, and tailoring relief from prejudice is within the district court's discretion." *United States v. Warner*, 498 F.3d 666, 700 (7th Cir. 2007) (citing *Zafiro*, 506 U.S. at 539-41); *see also Berg*, 714 F.3d at 496 (noting that severance is not always the best solution to the potential prejudice that can arise when trying multiple charges at the same time).

    Here, Mr. Tinsley has not overcome the presumption that "jurors, conscious of the gravity of their task, attend closely to the particular language of the trial court's instructions in a criminal case and strive to understand, make sense of, and follow the instructions given them." *United States v. Puckett*, 405 F.3d 589 (7th Cir. 2005) (quoting *United States v. Linwood*, 142 F.3d 418, 426 (7th Cir. 1998)). An instruction to separately consider each charge and the evidence supporting it provides "an adequate safeguard against the risk of prejudice in the form of jury confusion, evidentiary spillover, and cumulation of evidence." *United States v. Berardi*, 675 F.2d 894, 901 (7th Cir. 1982); *see also United States v. Coleman*, 22 F.3d 126, 135 (7th Cir. 1994)

8

(noting that "the incidents were discrete as was the proof offered at trial, and the evidence as to each was anything but excessive or confusing").

Last, judicial economy also favors a single trial because if the counts were severed, the trials would involve mostly the same evidence. The government asserts that, in a trial on only the bank robbery, the government would introduce the evidence recovered during the September 17, 2019 searches. Dkt. 47 at 15. Similarly, in a trial on just the marijuana and firearms charges, the government would also introduce evidence recovered during the September 17, 2019 searches. *Id.* This would require the same testimony about the search, photographs, documentation, and procedure in both trials and would result in "repetitious trials involving the same evidence and the same witnesses." *Peters*, 791 F.2d at 1287 (superseded by statute on other grounds).

## IV.
## Conclusion

Mr. Tinsley's motion to sever is **DENIED**. Dkt. [43].

**SO ORDERED.**

Date: 1/19/2021

*James Patrick Hanlon*
James Patrick Hanlon
United States District Judge
Southern District of Indiana

9

Distribution:

Lawrence Darnell Hilton
UNITED STATES ATTORNEY'S OFFICE (Indianapolis)
lawrence.hilton@usdoj.gov

Amanda Kester
UNITED STATES ATTORNEY'S OFFICE (Indianapolis)
amanda.kester@usdoj.gov

Gregory B. Spencer
GREG SPENCER LAW LLC
greg@gspencerlaw.com